## Commonwealth *vs.* Marcelo DeOliveira.

Middlesex. May 4, 2006. - June 19, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Constitutional Law,* Confrontation of witnesses. *Rape. Evidence,* Corroborative evidence, Hearsay, Testimonial statement. *Witness,* Physician. *Practice, Criminal,* Confrontation of witnesses.

This court concluded that statements by a six year old alleged rape victim to her doctor regarding her sexual abuse were made for purposes of medical evaluation and treatment and were not testimonial in fact; therefore, the admission of those statements in evidence at trial, notwithstanding the child's unavailability to testify, would not violate the criminal defendant's right to cross-examine witnesses against him. [63-67]

Indictments found and returned in the Superior Court Department on August 27, 2002.

A motion to dismiss was heard by *Regina L. Quinlan,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Sosman,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Thomas D. Ralph,* Special Assistant District Attorney, for the Commonwealth.

*Michael D. Brennan* for the defendant.

*Alice Anna Phillips & Danica Szarvas-Kidd,* for American Prosecutors Research Institute, amicus curiae, submitted a brief.

Greaney, J. The Commonwealth appeals from that portion of a judge's order entered in the Superior Court allowing the defendant's motion to exclude from the evidence at trial statements made by the alleged victim in this case, a six year old girl (whom we shall call Patricia, a pseudonym), to an emergency room pediatrician disclosing (in a child's terms) that she had been anally raped. The defendant, the live-in boyfriend

of Patricia's mother and the father of Patricia's younger sister, has been indicted for the forcible rape of a child under sixteen years of age (G. L. c. 265, § 22A), based, in part, on Patricia's statements to the doctor.

· The judge allowed the defendant's motion on the ground that the statements to the doctor, as well as related statements inculpating the defendant made by Patricia to an investigator for the Department of Social Services (department), were "testimonial" in nature and, because Patricia will be unavailable to testify at trial, their admission in evidence against the defendant would deny him the right to cross-examine witnesses against him in contravention of the confrontation clause of the Sixth Amendment to the United States Constitution, as interpreted by the United States Supreme Court in *Crawford* v. *Washington*, 541 U.S. 36 (2004) (*Crawford*). A single justice of this court allowed the Commonwealth's application for leave to prosecute an interlocutory appeal in the Appeals Court, see Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996), and we transferred the case to this court on our own motion. We conclude that Patricia's statements to the physician were made for purposes of medical evaluation and treatment and were not, under our reading of *Crawford*, "testimonial." Consequently, we reverse that part of the order that is the subject of the Commonwealth's appeal.

1. The Sixth Amendment, applicable to States through the Fourteenth Amendment to the United States Constitution, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."[1] Prior to *Crawford*, traditional confrontation clause jurisprudence permitted the admission of an out-of-court state-

---

[1]The right of a criminal defendant to confront witnesses who testify against him also is protected by art. 12 of the Massachusetts Declaration of Rights, which provides that in a criminal trial "every subject shall have a right to produce all proofs, that may be favorable to him [and] to meet the witnesses against him face to face." Although, in some circumstances, art. 12 may provide a criminal defendant more protection than its Federal counterpart, see *Commonwealth* v. *Amirault*, 424 Mass. 618, 631-632 (1997); *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 541-542 (1988), in cases like this one involving the hearsay rule and its exceptions, we have always held that the protection provided by art. 12 is coextensive with the guarantees of the Sixth Amendment to the United States Constitution. See *Commonwealth* v. *Whelton*, 428

ment by a declarant unavailable to testify at trial, so long as it "falls within a firmly rooted hearsay exception" or otherwise bore "particularized guarantees of trustworthiness." *Ohio* v. *Roberts*, 448 U.S. 56, 66 (1980). *Crawford* measurably altered this understanding of the confrontation clause. In *Crawford*, the Supreme Court mandated a more literal understanding of "the right to be confronted by witnesses" where testimonial statements are involved when it stated: "[The confrontation clause] commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61. The Court decided that testimonial statements include, at a minimum, "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and [statements made during] police interrogations." *Id.* at 68. Beyond those proscribed areas, the *Crawford* Court presented three different formulations articulating a "core class of 'testimonial statements,' "[2] but did not offer definitive guidance as to which of the remaining types of out-of-court statements, with which judges are confronted daily in the context of suppression and in limine motions, might qualify as testimonial and, thus, be inadmissible in a criminal prosecution absent an opportunity on the part of the defendant for cross-examination of the declarant. The focus of the *Crawford* decision appears to be on whether the government was involved in producing the statement, see *id.* at 51-52, 56-57 n.7, and also on whether the declarant could reasonably expect that the statement would later be used in a prosecution. See *id.* at 52.

2. The judge's factual findings, supplemented in parts by un-

Mass. 24, 28 (1998); *Commonwealth* v. *Childs*, 413 Mass. 252, 260 (1992). Although the defendant refers to art. 12 in his brief, he presents no independent argument that would persuade us to change this view.

[2] The first formulation is "ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Crawford* v. *Washington*, 541 U.S. 36, 51 (2004) (*Crawford*). The second is "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." *Id.* at 51-52, quoting *White* v. *Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., concurring). The third is any statement "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford, supra* at 52.

contradicted testimony consistent with her findings, disclose the following. Sometime after 4 P.M. on July 9, 2002, a social worker and investigator from the department in Framingham went to Patricia's home to investigate a complaint filed by a daycare worker, pursuant to G. L. c. 119, § 51E, alleging domestic abuse. Present in the home at that time were Patricia, her three year old sister, and the girls' mother. The social worker interviewed each separately, out of the presence of the others. During her interview with Patricia, the child stated that the defendant had hit her with a belt on the "bum," and, once in a while, her mother would hit her hand.[3] She also told the social worker that she had observed her mother and the defendant fighting and that the defendant had hurt her mother. When the social worker asked Patricia if she had been hurt by the defendant in any other way, she responded that he had put his "pee pee" in her "bum [and] in her mouth" and pointed to her vaginal area. Patricia told the social worker that this happened many times when she was five and six years of age. Patricia reported that the defendant also had her touch his "pee pee" with her hand and that she had seen some "white stuff" come out of his "pee pee" and go onto the floor.[4] Patricia stated that the defendant had told her not to tell her mother, but that she had told her mother anyway. The social worker informed her supervisor of Patricia's statements by telephone and then made contact with the Framingham police department. Police officers responded to the scene and transported Patricia and her mother

[3]None of Patricia's statements to the social worker is at issue in this appeal. We set them forth merely to provide context for the remaining facts, and the discussion which follows, in this opinion. The Commonwealth's original intention to introduce Patricia's statements to the social worker as "fresh complaint" testimony (now referred to as "first complaint," *Commonwealth* v. *King*, 445 Mass. 217, 242 [2005]) was thwarted when Patricia became unavailable to testify in court. See *Commonwealth* v. *Peters*, 429 Mass. 22, 27 (1999) ("fresh complaint" admissible only to corroborate complainant's testimony). The judge allowed the defendant's motion in limine to exclude all of the statements made by Patricia to the social worker on the afternoon of July 9, 2002, concluding that the statements were "testimonial" and, thus, barred from admission in evidence, in accordance with *Crawford* principles. The Commonwealth asserts no challenge to this conclusion.

[4]Patricia's mother subsequently confirmed that Patricia had told her of one alleged incident three months earlier, and that she had confronted the defendant, but that he had denied that the incident took place.

to the Framingham police station, where the mother received an emergency protective order against the defendant. The police then took Patricia and her mother to the emergency room of a hospital in Framingham so that Patricia could receive a medical assessment for sexual abuse.

At the hospital, Patricia was examined by a pediatrician who specializes in pediatric emergency medicine.[5] The doctor testified that he spoke with the police prior to examining Patricia and was aware that the child had been brought to the hospital because of an allegation that she had been sexually abused.[6] The doctor's testimony indicated that circumstances in which a child is brought to the hospital by police officers after responding to an emergency are common in his practice. Information given by first responders, including the police, helps to direct a physician to a patient's primary problem (which must then be verified, if at all possible, with the patient or a family member). The doctor stated that, each time he examines a patient, he is aware of the possibility that he might be summonsed to testify about his findings in a criminal case, but that this awareness does not affect the manner in which he treats a patient under his care. He testified that he works "[a]bsolutely" independently of the police, and he repeatedly emphasized that the purpose of his examination of Patricia was to determine whether there has been sexual abuse, whether the child was injured, and whether she needed medical treatment.

Patricia's mother was present in the examination room when the doctor examined her daughter. The doctor had no specific recollection concerning police presence during the examination, but stated that it would be "highly unusual" for the police to be present during the examination of a patient. When the doctor (who was wearing a white coat) asked Patricia what had happened to her, she told him that her "daddy [how Patricia referred to the defendant] had put his penis in . . . here, here, and here

---

[5]The doctor initially testified that he did not have a specific independent memory of events surrounding his examination of Patricia, but relied on documents in her medical records, prepared by himself and other medical staff, to refresh his memory.

[6]Patricia's medical chart states that she and her mother presented at the hospital "for [a question of] Sexual abuse. Framingham police were here [and] spoke [with the doctor]."

[pointing to her mouth, vagina, and rectum].'"[7] A medical record prepared by the doctor documenting his examination discloses that the child's genitals revealed no signs of trauma, but that her rectum was dilated with an apparent adhesion across the anal canal. As a result of his examination, the doctor, a mandated reporter under G. L. c. 119, § 51A, filed a complaint of sexual abuse with the department.

The defendant was charged with rape of a child by force on indictments alleging vaginal rape, oral rape, and anal rape, occurring on divers dates during the period from February 16, 2001, through July 9, 2002. The matter was called for trial on November 29, 2004, and was continued until the following day, when the Commonwealth informed the judge that Patricia would not be able to testify at that time or in the foreseeable future, and, consequently, the Commonwealth would proceed only on the indictment alleging anal rape (to which crime, the Commonwealth indicated to the judge, the defendant had confessed). The judge declared Patricia to be "legally unavailable" to both parties and, with the Commonwealth's consent, dismissed the indictments alleging vaginal and oral rape.

The defendant moved at that time to dismiss the remaining indictment alleging anal rape, arguing that there was insufficient corroboration of his confession, as required by *Commonwealth v. Costello*, 411 Mass. 371, 374 (1991), to sustain that charge. The defendant also contended that the introduction at trial of any out-of-court statements made by Patricia to the social worker, or to the doctor, regarding the alleged sexual abuse was impermissible under the Supreme Court's holding in *Crawford*. The judge denied the motion on the ground that the medical examination of Patricia established independent physical evidence to satisfy the corroboration requirement. Treating the defendant's motion to dismiss as a motion in limine, the judge allowed it on the basis that the statements of Patricia to the social worker and to the doctor were "testimonial" and, therefore, would be inadmissible at trial under the rationale of *Crawford*. On the Commonwealth's motion for reconsideration, the judge held an evidentiary hearing.

---

[7]The doctor's medical notes indicate that Patricia believed that the acts she described had not happened recently.

After hearing testimony from the social worker and the doctor, and hearing further arguments of the parties, the judge entered a revised order on the defendant's motion to dismiss, again excluding the statements in question "unless [Patricia] shall testify and be subject to cross-examination." As her written memorandum of decision explaining her order makes clear, the judge correctly assessed the impact that the then newly released *Crawford* decision would have on the development of State evidentiary rules of hearsay and the significance, under *Crawford*, of the determination whether a particular out-of-court statement is, or is not, "testimonial." The judge recognized, essentially, that not every statement made to medical personnel would come within the purview of *Crawford*, but concluded that the statements to the doctor were made during a medical "evaluation for sexual abuse" that was part of a criminal investigation, where police were present at the hospital and had consulted with the doctor prior to his examination of Patricia. As such, the admission of that part of Patricia's statements describing the fact, and the nature, of the sexual assaults, without providing the defendant the opportunity to test the truth of those statements by cross-examination, would violate the defendant's right of confrontation under *Crawford*.

The defendant does not dispute that the statements in question would be admissible under Massachusetts evidentiary rules of hearsay law absent a *Crawford* problem. It has long been our rule that physicians may testify as to statements of symptoms and conditions made to them for purposes of medical diagnosis or treatment. See *Commonwealth* v. *Comtois*, 399 Mass. 668, 675 (1987).[8] That exception, however, does not extend to testimony that goes to a defendant's guilt. See *Commonwealth* v. *Howard*, 355 Mass. 526, 528-530 (1969). Recognizing this limitation, the judge concluded that Patricia's explicit identification of her "daddy" as the perpetrator of the sexual assault against her would not be admissible at trial. The Commonwealth

[8]Neither do the parties appear to challenge the admissibility of the statements as documented in relevant medical records, pursuant to G. L. c. 233, § 79. The Appeals Court recently addressed the interrelation of *Crawford* and G. L. c. 233, § 79, and concluded that "*Crawford* casts no doubt on the constitutionality of [that statute]." *Commonwealth* v. *Lampron*, 65 Mass. App. Ct. 340, 346 (2005).

does not argue that this conclusion was incorrect and concedes that Patricia's statements to Dr. Horwitz, if admissible, should be redacted to remove the reference to the defendant as her assailant. The sole question presented by this appeal is whether Patricia's statements to Dr. Horwitz disclosing that someone had put his penis "here, here, and here" are "testimonial" for purposes of *Crawford*. See *Commonwealth v. Gonsalves*, 445 Mass. 1, 14 (2005) ("constitutional provision of the confrontation clause trumps [our own] rules of evidence"). We now address that question.

3. In our first post-*Crawford* decision, *Commonwealth v. Gonsalves, supra*, we developed a two-part framework for analysis whether out-of-court statements are "testimonial."[9] We first held that "statements made in response to questioning by law enforcement agents are per se testimonial, except when the questioning is meant to secure a volatile scene or to establish the need for or provide medical care." *Id.* at 3. We next considered those statements made in response to questions of law enforcement agents that are not testimonial per se, as well as statements in response to questions of people who are not law enforcement agents, and any statement offered spontaneously to another. We pointed out that these statements must be carefully examined to determine whether, on the facts of a particular case, a statement had been made with the purpose of bearing testimony against an accused. See *id.* at 11. We explained: "An out-of-court incriminating statement that is not per se testimonial still may be testimonial in fact. The proper inquiry is whether a reasonable person in the declarant's position would anticipate the statement's being used against the accused in investigating and prosecuting a crime." *Id.* at 12-13. Our *Gonsalves* decision instructs that a statement, generally, is testimonial per se if made in response to police questioning and testimonial in fact if the circumstances in which the statement was made would lead an objective witness reasonably to believe that the statement would be used at a later trial. See *id*. This test easily resolves the facts of the case before us.

[9]The judge did not have the benefit of our decision in *Commonwealth v. Gonsalves*, 445 Mass. 1 (2005), which was released almost nine months after the entry of the challenged suppression order.

Patricia's statements cannot persuasively be said to have been made in response to police interrogation. Although police officers were present at the hospital, there is no indication in the record that they were present during the doctor's examination of Patricia, or that they had instructed the doctor on the manner in which his examination should proceed. Nothing in the record would support a determination that the doctor acted as an agent of law enforcement. Indeed, the doctor's testimony as to his role as a physician entirely independent from law enforcement, and the judge's findings in connection with his medical evaluation of Patricia, are all to the contrary. Police presence at a hospital cannot turn questioning of a patient by a physician during a medical examination into interrogation by law enforcement. We conclude that Patricia's statements to the doctor are not testimonial per se. That is, however, not the end of the analysis. Our *Gonsalves* decision also requires a careful assessment of all the circumstances in which a statement is made and an objective inquiry into "whether a reasonable person in the declarant's position would anticipate the statement's being used against the accused in investigating and prosecuting a crime." *Id.* at 12-13.

Logic informs that a six year old child can have little or no comprehension of a criminal prosecution in which the child's words might be introduced as evidence against another person in a court of law. If the *Crawford* inquiry were dependent on a very young declarant's knowledge of trial procedure, even under an objective reasonableness standard, that inquiry would lead, in every case, to a determination that statements are nontestimonial and result in the admissibility, at least so far as *Crawford* is concerned, of every out-of-court statement by a young child to another (except those made in response to police questioning and, therefore, per se testimonial). We are hesitant to believe that the Supreme Court would indorse a rule of such encompassing latitude, given *Crawford*'s repeated admonitions reminding us of the importance of honoring the right to cross-examination.[10] In the circumstances of this case, however, there is ample evidence in the record to infer that, when Dr. Horwitz

[10]The American Prosecutors Research Institute has filed a brief urging us to hold that statements made by a young child to a medical professional, even if

asked Patricia what had happened that had brought her to the hospital, Patricia understood the question to be a medical one, and, in the forthright manner of a small child, readily responded by pointing to her body while describing a penis being put "here, here, and here." We have no difficulty concluding that, considering the circumstances, a reasonable person in Patricia's position, and armed with her knowledge,[11] could not have anticipated that her statements might be used in a prosecution against the defendant. On this record, there is nothing to indicate that Patricia even recognized the criminality of the defendant's sexual contacts with her.[12] In keeping with the standard set in *Commonwealth* v. *Gonsalves, supra,* therefore, the statements in question are not testimonial in fact and are properly admissible

initiated at the request of law enforcement, cannot be deemed testimonial if, employing a "reasonable child" standard, the child cannot reasonably comprehend that the statements may later be used in court. We decline to adopt such a broad rule and adhere to a more cautious case-by-case approach. It is, in our opinion, a preferable way to resolve questions raised in the wake of *Crawford,* at least until the United States Supreme Court ultimately provides further guidance. We also are cognizant of one footnote in the *Crawford* decision, relevant to this point, referencing *White* v. *Illinois,* 502 U.S. 346 (1992), a case where the Court held that the Sixth Amendment did not require a judicial finding that a four year old child was unavailable in order to admit out-of-court statements that the child addressed to her baby sitter, her mother, an investigating police officer, and a doctor. The *Crawford* Court noted that the *White* decision with respect to the child's statements to the investigating police officer (admitted as a spontaneous utterance) is "arguably in tension with the rule requiring a prior opportunity for cross-examination when the proffered statement is testimonial." *Crawford, supra* at 58 n.8. We understand these words to suggest that at least some statements by very young children may be testimonial.

[11]Our "reasonable person" standard takes into account all of the facts in a given situation and, therefore, must be understood to allow, as a pertinent fact to be considered, a particular declarant's lack of knowledge or sophistication that is attributable to age. See *Commonwealth* v. *Grey,* 399 Mass. 469, 472 n.4 (1987) ("objective reasonable person test is applied to the circumstances the defendant knew [a subjective measure]"). See also, e.g., *Ross* v. *Garabedian,* 433 Mass. 360, 371 (2001) (Sosman, J., dissenting) (reasonable person standard allows consideration of altered judgment suffered as result of defendant's conduct); *Commonwealth* v. *Ruddock,* 428 Mass. 288, 290-291 (1998) (reasonable person standard allows consideration of defendant's mental condition impaired as result of ingested drugs).

[12]Although Patricia had accompanied her mother to the police station, where her mother obtained a protective order, Patricia's statements to the social worker had included reference to the defendant's hurting Patricia's mother, conduct that a young child might more readily recognize as criminal.

at trial, notwithstanding the child's unavailability to testify, subject to our evidentiary rules.[13]

Our conclusion is consistent with the majority of decisions from other jurisdictions that have considered, in view of *Crawford*, statements concerning sexual assaults made by young children during medical assessments by a nurse or a physician. On facts particularly similar to this case, in *People* v. *Vigil*, 127 P.3d 916, 926 (Colo. 2006), the Supreme Court of Colorado held that responses by a seven year old boy to questions of a doctor performing a sexual assault examination were not testimonial. The Colorado court determined that, rather than being an agent of the police, the doctor's job was to identify and treat sexual abuse. See *id.* at 924. Applying what the court termed the "objective witness test," the court reasoned that a reasonably objective seven year old in the child's position would assume that the doctor's examination was only for the purpose of medical diagnosis ("to make him feel better") and would not foresee his statements being used in a later trial. *Id.* at 926. See, e.g., *State* v. *Scacchetti*, 711 N.W.2d 508 (Minn. 2006) (videotaped statements made by three and one-half year old child to pediatric nurse practitioner admissible at trial); *State* v. *Vaught*, 268 Neb. 316, 325-327 (2004) (child brought to hospital for medical treatment rather than to develop testimony; statements to doctor not testimonial).[14] It also is in accord with what has been said in our decisions construing a defendant's rights

---

[13]Where nontestimonial hearsay is at issue, *Crawford* instructs that "it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law — as does [*Ohio* v. *Roberts*, 448 U.S. 56 (1980)], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford, supra* at 68.

[14]We mention two decisions relied on by the judge and cited by the defendant. The first, *In re T.T.*, 351 Ill. App. 3d 976 (2004), in which the Appellate Court of Illinois held that a child victim's "accusatory statements [to a doctor] identifying [the] respondent as the perpetrator do implicate the core concerns protected by the confrontation clause," *id.* at 993, is hardly helpful to the defendant's position, because the court also held that the victim's statements to the doctor "regarding the nature of the alleged attack, the physical exam, and complaints of pain or injury" were not testimonial and, therefore, remained governed by the medical treatment hearsay exception statute. *Id.* The second, State *vs.* Mileski, No. 248038 (Mich. App. Ct. Nov. 4, 2004), in which the Court of Appeals of Michigan held inadmissible statements made by a child to a forensic nurse who was also a government employee, is an

under the confrontation clause as articulated in *Crawford*. See *Commonwealth* v. *Gonsalves*, *supra* (statements made by complainant describing assault to mother admissible); *Commonwealth* v. *Foley*, 445 Mass. 1001 (2005) (admission of adult assault victim's statements to police violated confrontation clause); *Commonwealth* v. *Verde*, 444 Mass. 279 (2005) (admission of certificates of drug analysis does not implicate confrontation clause). See also *Commonwealth* v. *Tang*, 66 Mass. App. Ct. 53 (2006) (statements of visibly shaken five year old boy to police securing shooting scene not testimonial); *Commonwealth* v. *Lampron*, 65 Mass. App. Ct. 340, 346 (2005) (admission of medical records permissible under *Crawford*).

The parties, quite properly, focus narrowly on the nature of Patricia's statements in this particular case. Our conclusion that Patricia's statements regarding her sexual abuse made to the doctor during her medical examination do not fall within the scope of "testimonial" statements under *Crawford*, leaves open larger questions whether, and in what circumstances, statements made to a medical professional may be considered testimonial when made by a child with respect to an issue other than sexual abuse or when made by an adult. We leave comment on these questions for a time when the issues are fully briefed and argued.

4. So much of the order allowing the exclusion from evidence of Patricia's statements to the social worker and the reference, in her statements to the doctor, to "daddy" is affirmed. The remainder of the order allowing suppression of Patricia's remaining statements to the doctor is reversed. The case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*

---

unpublished decision with which we do not agree.