STATE OF CONNECTICUT *v.* JOHN SLATER
(AC 26356)

McLachlan, Gruendel and Rogers, Js.

Argued September 6—officially released October 31, 2006

*William B. Westcott*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Terence Mariani,* senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, John Slater, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B). The defendant claims that the trial court (1) violated his right of confrontation by admitting certain hearsay evidence and (2) violated his right to a fair trial by denying his request for a special jury instruction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In Waterbury on the evening of May 6, 1997, the defendant forced the victim[1] into his motor vehicle and, with a knife in hand, forced her to engage in sexual relations. After ejaculating in her vagina, the defendant let the victim go. Moments later, Barry Kilcran and Gary Jones, who were standing in front of Kilcran's home at 129 Warner Street, heard the screams of a woman. As Jones testified, "a girl was coming down the street, she was crying, screaming, saying somebody tried to rape me." The victim described her attacker only as "a black male with a big knife." The men attempted to calm the victim, brought her inside Kilcran's home and called the police. Jones testified that the victim "wasn't normal . . . she was crying. She looked hysterical, disoriented."

Shortly thereafter, officers from the Waterbury police department and an ambulance arrived at 129 Warner

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Street. The victim was transported to St. Mary's Hospital and admitted to the emergency room. Catherine Judd, a registered nurse, first encountered the victim, whom she described as crying and upset. Judd noted that the victim "was trying to hide in a corner" of the emergency room. The victim told Judd that she had been raped. Mickey Wise, a physician, also treated the victim that evening and administered a rape kit, which is used to gather evidence from the victim of a sexual assault. Among the evidence gathered that evening were vaginal swabs. Wise testified that the victim informed him that an "unknown person forced her into his car and . . . forced her to perform oral sex on him, then vaginal intercourse. Ejaculated in her vagina. . . . He had a large knife with which he poked her on her right hand."

The rape kit was forwarded to the Waterbury police department, which unsuccessfully investigated the rape complaint, and the case ultimately was closed. The case was opened four years later, at which time the police obtained a blood sample from the defendant. The state police forensic laboratory analyzed the sample and compared the DNA profile contained therein with that extracted from the victim's vaginal swab. They matched.[2]

The defendant was arrested and charged with sexual assault in the first degree and kidnapping in the first degree. Prior to trial, the victim died from causes unrelated to the May 6, 1997 sexual assault. In light of her unavailability for trial, the defendant filed a motion in limine to exclude certain hearsay evidence consistent with the mandates of *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), which the court denied. After a trial by jury, the defendant

---

[2] Criminalist Nicholas Yang performed the DNA analysis. He testified that the expected frequency of individuals who could contribute to the vaginal sample "is approximately one in 7.9 million for the African-American population." The defendant is an African-American.

was convicted of both charges. The court subsequently sentenced the defendant to concurrent fifteen year terms of imprisonment with five years special parole, and this appeal followed.

I

The defendant first challenges the admission of certain hearsay statements as violative of his sixth amendment right of confrontation.[3] This court recently addressed this evolving area of constitutional law in *State* v. *Miller*, 95 Conn. App. 362, 896 A.2d 844, cert. denied, 279 Conn. 907, 901 A.2d 1228 (2006). We stated: "[T]he state's use of hearsay evidence against an accused in a criminal trial is limited by the confrontation clause of the sixth amendment. . . . [It] guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. . . . The right to confrontation secures to the defendant the opportunity to cross-examine witnesses against him . . . and to expose to the jury the facts from which the jurors . . . could appropriately draw inferences relating to the reliability of the witness. . . .

"Traditionally, for purposes of the confrontation clause, all hearsay statements were admissible if (1) the declarant was unavailable to testify, and (2) the statement bore adequate indicia of reliability. . . . In a sea change in sixth amendment jurisprudence, the United States Supreme Court in *Crawford* v. *Washington*, [supra, 541 U.S. 68], overruled, in part, *Ohio* v. *Roberts*, [448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980)]. In *Crawford*, the court redefine[d] the scope and effect of the Confrontation Clause . . . . In reframing its purpose and scope, the court determined that the clause's predominant objective . . . is preventing the admission of testimonial statements against

___

[3] At oral argument, the defendant conceded that "as a matter of state evidentiary principles," the statements properly were admitted.

criminal defendants who never had an opportunity to cross-examine the declarant. . . . The court thus held that no prior testimonial statement made by a declarant who does not testify at the trial may be admitted against a defendant unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine him or her. . . . At the same time, *Crawford* leaves the *Roberts* approach untouched with respect to nontestimonial statements. . . . Our inquiry into whether the [admission of the] statement violates the confrontation clause must therefore begin with a consideration of whether the challenged statement was testimonial, as that term is used in *Crawford*.

"The *Crawford* court expressly declined to spell out a comprehensive definition of testimonial. . . . However, it held that the term applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. . . . By contrast, it does not apply to a casual remark made to an acquaintance. . . . Beyond that, the court left for another day the question of precisely what constitutes testimonial hearsay. . . .

"In the wake of *Crawford*, courts across the country have grappled with the meaning of testimonial hearsay. The United States Court of Appeals for the Second Circuit tackled the issue in *United States* v. *Saget*, [377 F.3d 223 (2d Cir. 2004), cert. denied, 543 U.S. 1079, 125 S. Ct. 938, 160 L. Ed. 2d 821 (2005)]. It observed that the types of statements cited by the [*Crawford* court] as testimonial share certain characteristics; all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings and noted further that *Crawford* suggests that the determinative factor in determining whether a declarant bears testimony is the declarant's awareness

or expectation that his or her statements may later be used at a trial. . . . The Second Circuit thus reasoned that the [United States Supreme] Court would use the reasonable expectation of the declarant as the anchor of a more concrete definition of testimony."[4] (Citations omitted; internal quotation marks omitted.) *State* v. *Miller,* supra, 95 Conn. App. 380–82. Finally, we note that the determination of whether a statement is testimonial under *Crawford* is subject to plenary review. *State* v. *Kirby,* 280 Conn. 361, 378, 908 A.2d 506 (2006).

In the present case, the defendant objects to both the victim's statements to Kilcran and Jones at 129 Warner Street and her statements to Judd and Wise in the emergency room. We consider each in turn.

A

The defendant first objects to the admission of the victim's statement to Kilcran and Jones at 129 Warner Street that she had been raped by a black male with a big knife. In denying the defendant's motion in limine to exclude that statement, the court concluded that the

---

[4] On June 19, 2006, the United States Supreme Court decided *Davis* v. *Washington,* 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), which involved appeals from the Supreme Courts of Washington and Indiana. Writing for the court, Justice Scalia explained that "these cases require us to determine more precisely which police interrogations produce testimony." Id., 822. He then articulated a primary purpose test for undertaking such determinations: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id., 822. The court further noted that "our holding today makes it unnecessary to consider whether and when statements made to someone other than law enforcement personnel are 'testimonial.' " Id., 823 n.2. Because none of the statements at issue in the present appeal involve law enforcement personnel, we decline the defendant's request to apply that test here mechanically. Nevertheless, *Davis* informs our consideration of the defendant's claims.

statement constituted a nontestimonial excited utterance. We agree.

The spontaneous utterance is a firmly rooted exception to the hearsay rule that is at least two centuries old. *White* v. *Illinois*, 502 U.S. 346, 355 n.8, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992). Connecticut first recognized the spontaneous utterance exception in *Perry* v. *Haritos*, 100 Conn. 476, 124 A. 44 (1924). Our Supreme Court explained: "This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced . . . by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy, . . . and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts. . . . When the declaration follows some startling occurrence and is made with reference to it by one having an opportunity to observe the matter of which he speaks, and in such close connection to the event and under such circumstances as to negative the opportunity for deliberation and fabrication and to indicate that it was a spontaneous utterance growing out of the nervous excitement and mental and physical condition of the declarant, it is reasonably probable that it is trustworthy. The spontaneity of the utterance is the guaranty of its trustworthiness. . . . The principle rests upon the common experience that utterances made under such circumstances are void of self-interest and are in the same category as exclamations of pain. The probability of falsehood is so remote as to be negligible." (Internal quotation marks omitted.) Id., 483–85.

Accordingly, an otherwise inadmissible hearsay statement may be admitted into evidence when "(1) the declaration follows a startling occurrence, (2) the declaration refers to that occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant." *State v. Kelly*, 256 Conn. 23, 41–42, 770 A.2d 908 (2001); see also Conn. Code Evid. § 8-3 (2) (exception applies to "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"); 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 97c, p. 949.

In *White* v. *Illinois*, supra, 502 U.S. 356, the United States Supreme Court held that the confrontation clause is satisfied by the sufficient guarantees of reliability inherent in spontaneous utterances. Notably, *Crawford* did not expressly overrule *White*.[5] *United States* v. *Saget*, supra, 377 F.3d 227. As one commentator put it, *White* "is arguably still good law." C. Byrom, "The Use of the Excited Utterance Hearsay Exception in the Prosecution of Domestic Violence Cases After *Crawford* v. *Washington*," 24 Rev. Litig. 409, 424 (2005). Although that proposition, if true, is fatal to the defendant's claim,

---

[5] The *Crawford* court stated: "Although our analysis in this case casts doubt on that holding, we need not definitively resolve whether [*White*] survives our decision today . . . ." *Crawford* v. *Washington*, supra, 541 U.S. 61. In a footnote, the court further observed: "One case arguably in tension with the rule requiring a prior opportunity for cross-examination when the proffered statement is testimonial is *White* v. *Illinois*, [supra, 502 U.S. 346], which involved, inter alia, statements of a child victim to an investigating police officer admitted as spontaneous declarations. . . . It is questionable whether testimonial statements would ever have been admissible on that ground in 1791; to the extent the hearsay exception for spontaneous declarations existed at all, it required that the statements be made 'immediat[ely] upon the hurt received, and before [the declarant] had time to devise or contrive any thing for her own advantage.' " (Citation omitted.) *Crawford* v. *Washington*, supra, 58 n.8.

we will not rest our analysis on so narrow a filament. Rather, we turn our attention to whether the victim's spontaneous utterances in the present case are testimonial, as that term is used in *Crawford*.

In Connecticut, the determinative inquiry in evaluating an allegedly spontaneous declaration concerns the opportunity for reflection. See, e.g., *State* v. *Kelly*, supra, 256 Conn. 61 ("appropriate question is whether the statements were made before reasoned reflection had taken place" [internal quotation marks omitted]); *Mei* v. *Alterman Transport Lines, Inc.*, 159 Conn. 307, 315, 268 A.2d 639 (1970) ("ultimate question is whether the utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation"); *Rockhill* v. *White Line Bus Co.*, 109 Conn. 706, 708, 145 A. 504 (1929) ("decisive question [is] whether the utterance was made under circumstances of physical shock or nervous excitement and under immediate and uncontrolled domination of the senses and before reasoned reflection had taken place" [internal quotation marks omitted]); see also C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.17.3, p. 619. As the United States Supreme Court emphasized, the spontaneous utterance is made "without the opportunity to reflect on the consequences of one's exclamation . . . ." *White* v. *Illinois*, supra, 502 U.S. 356.

If the reasonable expectation of the declarant, namely, whether the declarant reasonably would expect that his or her responses might be used in future judicial proceedings, is the anchor of a more concrete definition of testimony; *State* v. *Miller*, supra, 95 Conn. App. 382, quoting *United States* v. *Saget*, supra, 377 F.3d 228–29; it seems paradoxical that a statement made without the opportunity to reflect on the consequences of one's exclamation could be testimonial. The very factors that qualify a declaration as a spontaneous utterance would disqualify it from being deemed testimonial under

*Crawford.* Cognizant of that inherent contradiction, some jurisdictions have articulated per se rules regarding the spontaneous utterance.[6] Other jurisdictions require a case-by-case examination of the totality of the circumstances to determine whether or not a given spontaneous utterance should be deemed testimonial.[7]

[6] See *United States* v. *Brun,* 416 F.3d 703, 707 (8th Cir. 2005) (spontaneous utterances not testimonial because they are "emotional and spontaneous rather than deliberate and calculated"); *People* v. *Corella,* 122 Cal. App. 4th 461, 469, 18 Cal. Rptr. 3d 770 (2004) ("it is difficult to identify any circumstances under which a . . . spontaneous statement would be 'testimonial.' . . . [The victim's] statements were ultimately used in a criminal prosecution, but statements made without reflection or deliberation are not made in contemplation of their 'testimonial' use in a future trial." [Citation omitted.]); *People* v. *Moscat,* 3 Misc. 3d 739, 746, 777 N.Y.S.2d 875 (2004) (spontaneous utterance is cry for help and not functionally equivalent to formal pretrial examination); *State* v. *Ohlson,* 131 Wash. App. 71, 83–84, 125 P.3d 990 (2005) (adopting per se rule that excited utterances cannot be testimonial).

[7] See *United States* v. *Brito,* 427 F.3d 53, 61 (1st Cir. 2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2983, 165 L. Ed. 2d 989 (2006); *Stancil* v. *United States,* 866 A.2d 799, 809 (D.C. App. 2005) ("[s]ome excited utterances are testimonial, and others are not, depending upon the circumstances"); *Lopez* v. *State,* 888 So. 2d 693, 699–700 (Fla. App. 2004) (statement to responding police officer testimonial even though it was excited utterance); *People* v. *Victors,* 353 Ill. App. 3d 801, 812, 819 N.E.2d 311 (2004) (statements to police officer at crime scene testimonial under circumstances), leave to appeal denied, 214 Ill. 2d 549, 830 N.E.2d 8 (2005); *Commonwealth* v. *Gonsalves,* 445 Mass. 1, 14, 833 N.E.2d 549 (2005) ("statement can be both testimonial in nature and a spontaneous utterance"), cert. denied, 548 U.S. 926, 126 S. Ct. 2982, 165 L. Ed. 2d 989 (2006); *People* v. *Diaz,* 21 App. Div. 3d 58, 66, 798 N.Y.S.2d 21 (2005) ("[t]here are circumstances in which an excited utterance would arguably be testimonial, particularly where it was given in reply to the deliberate questions of a police officer" [internal quotation marks omitted]), appeal dismissed, 7 N.Y. 3d 831, 857 N.E.2d 47, 823 N.Y.S.2d 752 (2006); *State* v. *Maclin,* 183 S.W.3d 335, 349 (Tenn.) (depending on particular facts of case, excited utterance can be testimonial), cert. denied sub nom. *Anderson* v. *Tennessee,* 549 U.S. 828, 127 S. Ct. 47, 166 L. Ed. 2d 49 (2006). That approach stems primarily from *Crawford*'s holding that the confrontation clause is a rule of procedure, not of evidence. *Crawford* v. *Washington,* supra, 541 U.S. 61. As one court aptly observed: "If we held that all excited utterances were nontestimonial, we would be leaving the regulation of the Confrontation Clause to the Rules of Evidence, which is specifically prohibited by *Crawford." Moore* v. *State,* 169 S.W.3d 467, 474 (Tex. App. 2005), review refused, 2006 Tex. Crim. App. LEXIS 401 (February 15, 2006).

The United States Supreme Court appears to have ended the debate by implicitly rejecting a per se rule that excited utterances cannot be testimonial. At issue in *Hammon* v. *Indiana,* the second of two cases decided in *Davis* v. *Washington,* 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), were statements made to law enforcement personnel following a 911 call. The trial court admitted the statements as excited utterances; the Indiana Supreme Court likewise concluded that the statements were admissible under Indiana evidentiary law as such. Id., 821. The United States Supreme Court held those excited utterances to be testimonial. It explained: "It is entirely clear from the circumstances that the interrogation was part of an investigation into possibly criminal past conduct—as, indeed, the testifying officer expressly acknowledged . . . . There was no emergency in progress . . . . Objectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime . . . ." (Citations omitted.) Id., 829–30. Thus, in cases involving spontaneous utterances made in the presence of law enforcement personnel, the *Davis* primary purpose test, itself largely a totality of the circumstances analysis, governs.

That is not the case here. The defendant concedes that the victim's statement was made to civilian bystanders.[8] Her screams as she ran along Warner Street plainly were cries for help. Contra id., 832 ("[victim's] statements were [not] a cry for help"). Her statement lacked any degree of "formality," which the *Davis* court stated is a factor in characterizing a particular statement

---

[8] The spontaneous utterances at issue in the recent decision of our Supreme Court in *State* v. *Kirby,* 280 Conn. 361, 908 A.2d 506 (2006), like those in *Davis* v. *Washington,* supra, 547 U.S. 813, involved a 911 dispatcher and police officers, not civilian bystanders. Accordingly, the court's analysis involved the application of the primary purpose test. Because the statements in the present case do not involve law enforcement personnel, *Kirby* is inapposite to the defendant's claim.

as testimonial. Id., 2277–78. Moreover, none of "the core class" of testimonial statements identified by *Crawford* are implicated here.[9] Although the defendant insists that an objective person in the victim's shoes reasonably would believe that her statement to Kilcran and Jones would be available for use at a later trial, we find that argument untenable in light of the factual record before us. Accordingly, her statements cannot be deemed testimonial.

Other courts that have considered the issue of spontaneous utterances to lay witnesses agree that such statements are nontestimonial. The decision of the Court of Appeals of Arizona in *State* v. *Aguilar*, 210 Ariz. 51, 53, 107 P.3d 377 (App.), review denied, Docket No. CR-05-0170-PR, 2005 Ariz. LEXIS 122 (November 30, 2005), is illustrative: "We discern nothing in [the Arizona Supreme Court's prior] description of an excited utterance that is even remotely similar to most of what *Crawford* offers as an example of a testimonial statement. Such an utterance is not a solemn, formal declaration, nor is it ex parte in-court testimony or its functional equivalent. And because it is made by a declarant whose reflective faculties have been stilled, the excited declarant will not simultaneously be rationally anticipating that his utterance might be used at a future court proceeding. . . . [E]xcited utterances heard and testified to by a lay witness are simply not

---

[9] The *Crawford* court stated: "Various formulations of this core class of testimonial statements exist: ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially . . . extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions . . . statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . [as well as] [s]tatements taken by police officers in the course of interrogations . . . ." (Citations omitted; internal quotation marks omitted.) *Crawford* v. *Washington*, supra, 541 U.S. 51–52.

akin to a *Crawford*-style testimonial statement . . . ." See also *Demons* v. *State*, 277 Ga. 724, 727–28, 595 S.E.2d 76 (2004); *State* v. *Doe*, 140 Idaho 873, 878, 103 P.3d 967, 972 (App. 2005); *State* v. *Orndorff*, 122 Wash. App. 781, 786, 95 P.3d 406 (2004), review denied, 154 Wash. 2d 1010, 113 P.3d 482 (2005); cf. *State* v. *Miller*, supra, 95 Conn. App. 384 ("statements made to friends in unofficial settings do not constitute testimonial hearsay"); *In re T.T.*, 351 Ill. App. 3d 976, 988, 815 N.E.2d 789 (2004) ("*Crawford* indicates that governmental involvement in some fashion in the creation of a formal statement is necessary to render the statement testimonial in nature"). This court has neither been presented with nor found any authority for the proposition that a spontaneous utterance made outside of the presence of law enforcement qualifies as testimonial under *Crawford*. The concerns articulated in *Crawford* simply are inapplicable to the present case. We therefore hold that the victim's spontaneous utterance cannot be considered testimonial for purposes of confrontation clause analysis.

## B

The defendant next takes issue with the admission of the victim's statements to Judd and Wise in the emergency room as statements made for the purpose of obtaining medical treatment. He contends that her statements were testimonial and, thus, impermissible under the confrontation clause.

The medical treatment exception is a long-standing exception to the hearsay rule. See, e.g., *State* v. *DePastino*, 228 Conn. 552, 565, 638 A.2d 578 (1994); *Brown* v. *Blauvelt*, 152 Conn. 272, 274, 205 A.2d 773 (1964), overruled on other grounds by *George* v. *Ericson*, 250 Conn. 312, 317, 736 A.2d 889 (1999) (en banc); *Gilmore* v. *American Tube & Stamping Co.*, 79 Conn. 498, 504, 66 A. 4 (1907). The exception applies to statements

"made for purposes of obtaining medical treatment or advice pertaining thereto and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical treatment or advice." Conn. Code Evid. § 8-3 (5); see also *State* v. *Aaron L.*, 272 Conn. 798, 814, 865 A.2d 1135 (2005). "The rationale underlying the medical treatment exception to the hearsay rule is that the patient's desire to recover his health . . . will restrain him from giving inaccurate statements to a physician employed to advise or treat him." (Internal quotation marks omitted.) *State* v. *Cruz*, 260 Conn. 1, 7, 792 A.2d 823 (2002); see also C. Tait, supra, § 8.20.2, p. 634.

"[T]he sole consideration to be evaluated in determining the admissibility of evidence under the medical treatment exception is whether the statements are made for the purpose of obtaining medical diagnosis or treatment and are pertinent to the diagnosis or treatment sought." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 75 Conn. App. 364, 376, 815 A.2d 1261 (2003), rev'd on other grounds, 272 Conn. 515, 864 A.2d 847 (2005). "The test focuses on the declarant's motives." *State* v. *Dollinger*, 20 Conn. App. 530, 536, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990).

The record indicates that on the day of the assault, the victim was transported to St. Mary's Hospital and admitted to the emergency room, where she was treated by Judd and Wise. Judd testified that the victim told her that she had been raped. After refreshing his recollection by reviewing his notes, Wise summarized the victim's statements to him as follows: "Unknown person forced her into his car and . . . forced her to perform oral sex on him, then vaginal intercourse. Ejaculated in her vagina. He did not hit her. She did

not hit, scratch or bite him. He had a large knife with which he poked her on her right hand."[10] The question before us is whether the admission of those statements runs afoul of the defendant's right of confrontation. Under the particular facts of this case, we conclude that it does not.

Our Supreme Court recently addressed the admissibility of statements made for the purpose of obtaining medical treatment under *Crawford.* It stated: "The key to the inquiry is whether the examination and questioning were for a diagnostic purpose and whether the statement was the by-product of substantive medical activity." (Internal quotation marks omitted.) *State* v. *Kirby,* supra, 280 Conn. 391. Because the statements in *Kirby* were germane to proper diagnosis and treatment of the victim's injuries and were not accusatory in nature, they were deemed nontestimonial. Id.

Other jurisdictions agree that statements made solely for the purpose of obtaining medical treatment are nontestimonial. See *United States* v. *Peneaux,* 432 F.3d 882, 896 (8th Cir. 2005) ("[w]here statements are made to a physician seeking to give medical aid in the form of diagnosis or treatment, they are presumptively nontestimonial"); *Commonwealth* v. *DeOliveira,* 447 Mass. 56, 57, 849 N.E.2d 218 (2006) ("statements to the physician were made for purposes of medical evaluation and treatment and were not, under our reading of *Crawford,* 'testimonial' "); *Foley* v. *State,* 914 So. 2d 677, 685 (Miss. 2005) (statements made as part of neutral medical evaluations do not meet *Crawford*'s testimonial criterion); *State* v. *Blue,* 717 N.W.2d 558, 563 (N. D. 2006) ("if an interview is done strictly for medical purposes, and not in anticipation of criminal proceedings, the statement would be considered nontestimonial"); *State* v. *Moses,*

---

[10] On his physical examination form, Wise noted a small puncture on the victim's right hand.

129 Wash. App. 718, 730, 119 P.3d 906 (2005) (statements to emergency room physician not testimonial when "the purpose of [the] examination was for medical diagnosis and treatment"), review denied, 157 Wash. 2d 1006, 136 P.3d 759 (2006).

When other courts have deemed such statements testimonial, the statements concerned fault or identity. See, e.g., *Commonwealth* v. *DeOliveira*, supra, 447 Mass. 62 (medical treatment exception "does not extend to testimony that goes to a defendant's guilt"); *State* v. *Bartholomew*, 127 Wash. App. 1006 (2005) (victim's statement identifying assailants testimonial because assigned guilt and no evidence presented suggesting identity was pertinent to medical treatment), review denied, Docket No. 77070-1, 2006 Wash. LEXIS 141 (February 2, 2006), cert. denied, 549 U.S. 852, 127 S. Ct. 120, 166 L. Ed. 2d 90 (2006); but see *State* v. *Vaught*, 268 Neb. 316, 326, 682 N.W.2d 284 (2004) ("We believe on the facts of this case that the victim's statement to the doctor was not a 'testimonial' statement under [*Crawford*]. . . . [T]he victim's identification of [the defendant] as the perpetrator was a statement made for the purpose of medical diagnosis or treatment. . . . There was no indication of a purpose to develop testimony for trial, nor was there an indication of government involvement in the initiation or course of the examination."). Particularly instructive is the decision of the Appellate Court of Illinois in *In re T.T.*, supra, 351 Ill. App. 3d 976. Like the present case, *In re T.T.* involved a sexual assault. The court recognized that, in treating a victim of a sexual assault, a physician necessarily is involved with the collection of evidence: "As a medical expert with a professional interest in a patient's treatment, [the examining pediatrician's] primary investment in cooperating with law enforcement agencies was in facilitating the least traumatic method of diagnosis and treatment for the alleged victim, rather

than a specific interest in enforcing sexual abuse laws against [the] respondent. In contrast to government officers like the police or [state department of children and family services] investigators, medical personnel who treat and diagnose sexual assault victims do not take on a similar investigatory or prosecutorial function. Certainly, the medical examination of the victim involves the collection of evidence for later use at a trial, because the victim's body and the injuries sustained may provide evidence of the crime. Moreover, the medical evaluation undoubtedly becomes a component in the determination by the police, State's Attorney, or [a state department of children and family services] investigator regarding whether the alleged assault merits further investigation or prosecution. Nevertheless, a victim's statements to medical personnel regarding descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof . . . are not testimonial in nature where such statements do not accuse or identify the perpetrator of the assault. . . . Those statements were not accusatory against [the] respondent at the time made and, thus, do not trigger enhanced protection under the confrontation clause." (Citation omitted; internal quotation marks omitted.) Id., 992–93. At the same time, the court concluded that the victim's "accusatory statements identifying [the] respondent as the perpetrator do implicate the core concerns protected by the confrontation clause. When the content of [the alleged victim's] statement concerned fault or identity, then such testimonial statements are only admissible through [the examining pediatrician] if [the alleged victim] testifies at trial and is subject to cross-examination." Id., 993.

The victim's statements to Wise and Judd concerned neither fault nor identity. Indeed, most significant about the victim's statements is the fact that she made no

attempt to identify her attacker. Although the victim earlier described her attacker to Kilcran and Jones as a black male, she did not share this information with Wise or Judd. Rather, she indicated merely that her attacker was an "[u]nknown person . . . ." The defendant's *Crawford* claim, in essence, is that the victim reasonably would believe that her statements would be available for use at a later trial. See *Crawford* v. *Washington*, supra, 541 U.S. 52. The victim's failure to identify her attacker in any manner severely undercuts that contention. See *State* v. *Kirby*, supra, 280 Conn. 391.

Furthermore, we note that in Connecticut, statements pertaining to "the nature of the sexual assault [are] wholly relevant and pertinent to proper diagnosis and treatment of the resulting physical and psychological injuries of sexual assault." (Internal quotation marks omitted.) *State* v. *Cruz*, supra, 260 Conn. 15. The victim's statements to Wise and Judd communicated that (1) she was forced into a vehicle by a person with a knife; (2) she was forced to engage in sexual relations with her attacker; (3) she did not strike her attacker and her attacker did not hit her; and (4) her attacker ejaculated in her vagina. We conclude that the court properly admitted the victim's statements, as they pertained to the nature of the sexual assault. Her statements were necessary for Wise and Judd to provide proper diagnosis and treatment of the victim's physical and psychological injuries.

The defendant is correct that General Statutes § 19a-112a (d) requires health care facilities to collect sexual assault evidence with the consent of the victim. That statutory imperative alone does not transform medical professionals from physicians to prosecutors. As medical professionals, Wise and Judd were obligated to diagnose and treat the victim's physical and psychological injuries. Although a rape kit was prepared that later

would be used in a criminal prosecution, there is no evidence in the record before us that Wise and Judd met with law enforcement prior to treating the victim or that law enforcement personnel were present in the emergency room. See *Foley* v. *State*, supra, 914 So. 2d 685 (defendant failed to demonstrate that medical professionals "were being used by the police as a means to interrogate" victim).

The United States Supreme Court directs us to focus our analysis on the victim's statements, as "it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate." *Davis* v. *Washington*, supra, 547 U.S. 823 n.1. The circumstances of this case indicate that Wise and Judd treated a woman who had been raped only hours earlier. The woman was visibly shaken and, upon arrival, attempted to hide in a corner of the emergency room. She made no effort to identify her attacker, and her statements to Wise and Judd merely communicated the horrific events that had just transpired. Put simply, her statements did not assign guilt. Cf. *State* v. *Bartholomew*, supra, 127 Wash. App. 1006. We conclude that the victim's statements to Wise and Judd are not of the same character as those *Crawford* identified as testimonial, such as prior testimony at a preliminary hearing, before a grand jury or at a former trial, and statements made during police interrogation. See *Crawford* v. *Washington*, supra, 541 U.S. 68. Her statements were made in an emergency room on the heels of the hurt received and were made for the purpose of obtaining medical treatment. Under such circumstances, the statements at issue cannot be characterized as testimonial.

## C

Having determined that the disputed statements are nontestimonial, a final task remains, as *Crawford* left

untouched the *Roberts* approach with respect to nontestimonial statements. Under *Roberts*, a particular hearsay statement is admissible if (1) the declarant was unavailable to testify, and (2) the statement bore "adequate indicia of reliability." (Internal quotation marks omitted.) *Ohio* v. *Roberts*, supra, 448 U.S. 66. The victim's statements were admitted under the spontaneous utterance and medical treatment exceptions to the hearsay rule. In *White* v. *Illinois*, supra, 502 U.S. 356–57, the United States Supreme Court held that the confrontation clause is satisfied by the sufficient guarantees of reliability inherent in those exceptions. The *Roberts* test, therefore, is met in the present case.

## II

The defendant also argues that the court violated his right to a fair trial by denying his request for a special jury instruction regarding the testimony of a jailhouse informant. His claim is predicated on the recent decision of our Supreme Court in *State* v. *Patterson*, 276 Conn. 452, 886 A.2d 777 (2005). Our analysis begins, therefore, with that precedent.

A defendant generally is not entitled to an instruction singling out any of the state's witnesses and highlighting their possible motives for testifying falsely. *State* v. *Ortiz*, 252 Conn. 533, 561, 747 A.2d 487 (2000). In *Patterson*, the court created an exception to that rule concerning informants. It stated: "We agree with the defendant that an informant who has been promised a benefit by the state in return for his or her testimony has a powerful incentive, fueled by self-interest, to implicate falsely the accused. Consequently, the testimony of such an informant, like that of an accomplice, is inevitably suspect. . . . Because the testimony of an informant who expects to receive a benefit from the state in exchange for his or her cooperation is no less suspect than the testimony of an accomplice who expects

leniency from the state, we conclude that the defendant was entitled to an instruction substantially in accord with the one that he had sought."[11] (Citations omitted.) *State* v. *Patterson*, supra, 276 Conn. 469–70.

The defendant in the present case requested a special instruction concerning the testimony of Robert Slater,[12] a jailhouse informant, which the court denied.[13] The state concedes that the court's failure to provide a special instruction was improper. The dispositive question, then, is whether that failure was harmless.

In *Patterson*, the court noted several factors to be considered in evaluating the harm in such instances. They include "(1) the extent to which [the informant's] apparent motive for falsifying his testimony was brought to the attention of the jury, by cross-examination or otherwise; (2) the nature of the court's instructions on witness credibility; (3) whether [the informant's] testimony was corroborated by substantial independent evidence; and (4) the relative importance of [the informant's] testimony to the state's case." Id., 472. Applying those factors, we conclude that the court's failure to instruct the jury specially as to the informant's motivation for testifying was harmless.

[11] "[T]the defendant requested the court to instruct the jury that, in evaluating [the informant's] testimony, the jury should consider the benefits that the state had promised [the informant] in exchange for his cooperation. The defendant further requested that the court advise the jury that [the informant's] testimony 'be reviewed with particular scrutiny and weighed . . . with greater care than the testimony of an ordinary witness.' " *State* v. *Patterson*, supra, 276 Conn. 465.

[12] Robert Slater is of no relation to the defendant.

[13] The defendant requested the following instruction: "[T]here has been evidence that Robert Slater has pending criminal cases and that the prosecutor in this case informed him that he would bring the fact that he testified for the state in this case to the attention of the court that might sentence him in his pending cases. Such evidence may be relevant to show a motive, an interest, a bias or prejudice and that Robert Slater's testimony was motivated by the hope for leniency in connection with his pending cases."

First, it is undisputed that the informant's apparent motive for testifying was brought to the attention of the jury. During cross-examination, the informant testified that the state had made no promises to him concerning his testimony, and he denied that the state had indicated that it would inform the sentencing judge in his pending cases of his cooperation in the present matter. In response, the state called its inspector, James Deeley, to impeach that assertion. Deeley stated that the informant was told by the state's attorney that he "would bring his cooperation to the attention of the sentencing judge." The state also called Waterbury police Sergeant Scott Stevenson to impeach the informant's testimony. Stevenson testified that the state's attorney told the informant that "he would bring to the attention of the sentencing court concerning his pending cases the fact that he testified in this case." The jury, thus, was on notice of the informant's possible motivation for testifying on behalf of the state.

Second, we note that the informant's testimony was corroborated by substantial independent evidence. In a voluntary statement made to the police signed by the defendant and dated August 18, 2003, the defendant stated that "I have never had sex with [the victim], forced or consensual." The informant testified otherwise, stating that the defendant indicated to him that he had sexual relations with the victim. That testimony was corroborated by the DNA evidence presented at trial that demonstrated that, to a very high degree of probability, the defendant's DNA was present in the vaginal swab.[14]

Finally, we note that the court instructed the jury that it must consider the interest, bias or prejudice of any witness. The court further stated that "[i]f you should think that a witness has deliberately testified

---

[14] See footnote 2.

falsely in some respect, you should carefully consider whether you should rely upon any of his testimony." Thus, although the jury was not specially instructed to consider the informant's apparent motive for testifying, it was generally instructed to consider the motivation of *any* witness before it. In light of the foregoing, we conclude that the court's failure to provide a special instruction to the jury was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.