## STATE OF CONNECTICUT *v.* REYNALDO ARROYO
## (AC 28044)

Schaller, DiPentima and Gruendel, Js.

Argued April 19—officially released October 9, 2007

*Andrew S. Liskov,* special public defender, for the appellant (defendant).

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, were *Timothy J. Liston,* state's

attorney, and *Maureen Platt*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Reynaldo Arroyo, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) and 53a-48, and larceny in the fifth degree in violation of General Statutes §§ 53a-125a (a) and 53a-119. On appeal, the defendant claims that the trial court improperly denied (1) his request for a special credibility instruction to the jury concerning the testimony of two jailhouse informants, (2) his requested jury instruction on DNA evidence and (3) his motion for a judgment of acquittal. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On the afternoon of March 28, 2001, the defendant asked his neighbor if he could borrow money, stating that he would pay the money back after he went on "a mission." Later that evening, the defendant and Richmond Perry drove to Mike's Package Store in Middlefield. At the counter, an argument ensued between the defendant and the owner of the store, Edmund Caruso, over the amount of change the defendant received from his purchase. The argument escalated, and the defendant pulled out a handgun and jumped over the counter. The defendant pushed Caruso, who then sprayed Mace at both the defendant and Perry. During the altercation, Caruso was shot several times and subsequently died as a result of his injuries. Following the shooting, the defendant and Perry fled from the scene with the cash register. The defendant was arrested several weeks later.

The defendant was charged with felony murder, murder, robbery in the first degree, larceny in the fifth degree and conspiracy to commit robbery in the first degree. The jury found him guilty of felony murder, larceny in the fifth degree and conspiracy to commit robbery in the first degree and not guilty of the other charges. The court imposed a total effective sentence of sixty years incarceration. This appeal followed. Additional facts will be set forth where necessary.

## I

The defendant first claims that the court improperly denied his request for a special credibility instruction concerning the testimony of two jailhouse informants. He further maintains that the impropriety was harmful and deprived him of his due process right to a fair trial. The defendant argues that because the jailhouse informants had hoped for and anticipated some benefit and were motivated by self-interest, the rule articulated by our Supreme Court in *State* v. *Patterson*, 276 Conn. 452, 886 A.2d 777 (2005), applies. We are not persuaded.

The following additional facts and procedural history are necessary for our resolution of this issue. At trial, the state presented the testimony of Thomas Moran and Ronald Avery. While awaiting their trials, Moran and Avery shared a courthouse lockup cell with the defendant. Both Moran and Avery testified that while in the lockup, on different occasions, the defendant confessed to them that he and Perry had robbed the package store and had shot Caruso.

Prior to his conversations with the defendant in the lockup, Moran had known the defendant and had lived with him for a short period of time earlier that year. Moran testified that although he had an extensive criminal record, he did not "believe in violence" and was testifying because "it was the right thing to do." The jury heard evidence that Moran had attempted to use

the information three different times in an effort to negotiate an agreement with the state, even though from the beginning, he was told, "you'll get nothing." Moran's attempts to obtain benefits in exchange for his cooperation were futile.

Avery met the defendant for the first time while in the lockup at the Norwich courthouse. Avery testified that he did not believe the defendant initially, but decided to come forth with the information after seeing the incident reported on the news. Avery testified that he thought there would be a monetary reward for the information, and, furthermore, he had hoped to use the information to "get some play" on his case.

Prior to the conclusion of the trial, the defendant requested that the judge instruct the jury that it should weigh, examine and view Moran's and Avery's testimony with great caution, care and scrutiny to determine whether the testimony had been affected by bias or prejudice against the defendant, and to consider whether Moran and Avery testified to serve their own self-interest because they believed or hoped that they would benefit by falsely implicating the defendant.

The court denied the defendant's request but instructed the jury to consider the motives of any witness and the credibility of his or her testimony, taking into account all the evidence as well as any inconsistencies in the witness' testimony and whether the witness had an interest in the outcome of the trial or any bias or prejudice toward any party or any matter in the case.

Our standard of review for claims of instructional impropriety is well established. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . ." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 179, 920 A.2d 236 (2007). "[I]ndividual jury instructions should not be

judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rule of law." (Internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 822, 911 A.2d 1099 (2007).

"Generally, a defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely." *State* v. *Ortiz*, 252 Conn. 533, 561, 747 A.2d 487 (2000). Prior to the *Patterson* case, our jurisprudence recognized two exceptions to this general rule: the complaining witness exception; *State* v. *Cooper*, 182 Conn. 207, 211–12, 438 A.2d 418 (1980);[1] and the accomplice witness exception. *State* v. *Shindell*, 195 Conn. 128, 142, 486 A.2d 637 (1985).[2] In *Patterson*, on which the defendant relies, our Supreme Court set forth a third exception for the testimony of jailhouse informants. *State* v. *Patterson*, supra, 276 Conn. 469–71. "We agree with the defendant that *an informant who has been promised a benefit by the state in return for his or her testimony* has a powerful incentive, fueled by self-interest, to implicate falsely the accused. Consequently, the testimony of such an informant, like that of an accomplice, is inevitably suspect. . . . Because the testimony of an

[1] "[When a] complaining witness could himself have been subject to prosecution depending only upon the veracity of his account of [the] particular criminal transaction, the court should [instruct] the jury in substantial compliance with the defendant's request to charge to determine the credibility of that witness in the light of any motive for testifying falsely and inculpating the accused." *State* v. *Cooper*, supra, 182 Conn. 211–12.

[2] "The well settled rule in this state regarding testimony of an accomplice is that where it is warranted by the evidence, it is the *court's duty* to caution the jury to scrutinize carefully the testimony if the jury finds that the witness intentionally assisted in the commission, or if he assisted or aided or abetted in the commission, of the offense with which the defendant is charged." (Emphasis in original; internal quotation marks omitted.) *State* v. *Shindell*, supra, 195 Conn. 142.

informant who expects to receive a benefit from the state in exchange for his or her cooperation is no less suspect than the testimony of an accomplice who expects leniency from the state, we conclude that the defendant was entitled to an instruction substantially in accord with the one that he had sought." (Citations omitted; emphasis added.) Id., 469–70.

We conclude that *Patterson* does not apply in this case. In *Patterson*, police officers contacted the jailhouse informant two days before the defendant's trial to inquire whether the defendant had made any incriminating statements to him while he and the defendant were cellmates. Id., 465. The informant sought and was promised a two year reduction in his sentence, a favorable recommendation in his pending charges, assistance in obtaining early parole, transfer to another prison and restoration of his visitation privileges for his cooperation. Id. Following *Patterson*, we agreed with the state's concession in *State* v. *Slater*, 98 Conn. App. 288, 309 & n.13, 908 A.2d 1097, cert. granted, 280 Conn. 950, 912 A.2d 484 (2006),[3] that the court should have given the *Patterson* instruction requested by the defendant. In *Slater*, a prosecutor told the informant that during sentencing on the charges pending against the informant, the prosecutor would call to the court's attention the fact that the informant had testified for the state. Id., 310. In the present case, perhaps Moran and Avery had hoped that they would receive some benefit when they volunteered information to the state, but our review of the record reveals no evidence that either received or had been promised any benefit or consideration. This fact distinguishes the present case

[3] Because the state conceded in *Slater* that the court improperly declined to give the credibility instruction under *Patterson*, the issue before this court on appeal was whether the failure to give the charge was harmful. See *State* v. *Slater*, supra, 98 Conn. App. 308–11.

from *Patterson* and *Slater*.[4] The special credibility
instruction required by *Patterson* is necessary only
when the jailhouse informant's incentive to lie is made
greater by a promise of some benefit for testifying
against the defendant. *State* v. *Patterson*, supra 276
Conn. 469–70. Indeed, requiring that trial courts give a
special credibility instruction every time a jailhouse
informant testifies that he or she merely hoped to
receive any benefit or consideration would be an over-
broad application of *Patterson*'s narrow exception to

[4] The defendant maintains that Moran was promised the same benefit as
the jailhouse informant in *Slater*. We do not agree. In the present case,
attorney Antonina McKay testified that she previously had represented
Moran. She further stated that to the best of her knowledge, he did not
receive any consideration for his report to the police regarding the murder
of the victim. During cross-examination, she stated that she "was immedi-
ately told that the court *may* take judicial notice of his cooperation in an
ongoing investigation at his sentencing. That was the extent, to my knowl-
edge, of any, any type of consideration that was shown to him." (Emphasis
added.) She then indicated that, to the best of her knowledge, Moran "was
not given any consideration for his statement."

On the basis of this record, we disagree with the defendant's statement
that Moran was promised a benefit in exchange for his statement to the
police. All that can be ascertained is that Moran was told that there was a
*possibility* that the court *might* consider his cooperation. In other words,
there was not a direct benefit promised to Moran. We further note that
these facts are markedly different from those found in *Slater*, in which
there was testimony from two witnesses that the informant was promised
explicitly that the court would be made aware of his cooperation.

"First, it is undisputed that the informant's apparent motive for testifying
was brought to the attention of the jury. During cross-examination, the
informant testified that the state had made no promises to him concerning
his testimony, and he denied that the state had indicated that it would inform
the sentencing judge in his pending cases of his cooperation in the present
matter. In response, the state called its inspector, James Deeley, to impeach
that assertion. Deeley stated that the informant was told by the state's
attorney that he would bring his cooperation to the attention of the sentenc-
ing judge. The state also called Waterbury police Sergeant Scott Stevenson
to impeach the informant's testimony. Stevenson testified that the state's
attorney told the informant that he would bring to the attention of the
sentencing court in his pending cases the fact that he testified in this case.
The jury, thus, was on notice of the informant's possible motivation for
testifying on behalf of the state." (Internal quotation marks omitted.) *State*
v. *Slater*, supra, 98 Conn. App. 310. We conclude, therefore, that the facts
in the present case are distinguishable from those in *Slater*.

the general rule that a defendant generally is not entitled to jury instructions that highlight any witness' possible motive for testifying falsely. We conclude that the court properly instructed the jury with respect to the testimony of Moran and Avery.

## II

The defendant next claims that the court improperly denied his requested jury instruction on DNA evidence. He further maintains that the impropriety was harmful because it prevented the jury from considering evidence relevant to his alibi defense in violation of his right to due process. We are not persuaded.

The following additional facts and procedural history are relevant to our resolution of this issue. In their investigation, the police seized three jackets belonging to the defendant that matched his description of what he was wearing on the night of the shooting. At that time, DNA testing was not performed on any of the jackets, but results from laboratory tests indicated the presence of Mace droplets on one of the jackets. During the trial, the defendant requested that the state perform a DNA test on the jacket, and DNA testing was conducted pursuant to court order. At trial, Michael Adamowicz, a lead criminalist employed by the department of public safety forensic science laboratory, testified that test results eliminated the victim, the defendant and Perry as the contributors of the DNA samples found on the jacket. On cross-examination, Adamowicz testified that DNA evidence is reliable and has been used in forensic work since the 1980s.

The defendant filed a motion on November 24, 2004, to request that the court give the following jury instruction on DNA evidence: "In this state it is the law that in any criminal proceeding DNA testing . . . shall be deemed to be a reliable scientific technique and the evidence of a DNA profile comparison may be admitted

to prove or disprove the identity of any person. Accordingly you may apply any DNA evidence that has been presented in this case, in your deliberations of the guilt or innocence of the [a]ccused, including whether the results of the DNA analysis tends to exculpate the accused." The defendant relied on the language used in General Statutes § 54-86k as the basis for this request to charge.[5] The court denied the defendant's requested DNA charge.

As we previously stated, "[t]he principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . ." (Internal quotation marks omitted.) *State* v. *Lawrence*, supra, 282 Conn. 179. "[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rule of law." (Internal quotation marks omitted.) *State* v. *Lopez*, supra, 280 Conn. 822.

"While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal." (Internal quotation marks omitted.) *State* v.

---

[5] General Statutes § 54-86k (a) provides: "In any criminal proceeding, DNA (deoxyribonucleic acid) testing shall be deemed to be a reliable scientific technique and the evidence of a DNA profile comparison may be admitted to prove or disprove the identity of any person. This section shall not otherwise limit the introduction of any relevant evidence bearing upon any question at issue before the court. The court shall, regardless of the results of the DNA analysis, if any, consider such other relevant evidence of the identity of the accused as shall be admissible in evidence."

*Dehaney*, 261 Conn. 336, 368, 803 A.2d 267 (2002), cert. denied, 537 U.S. 1217, 123 S. Ct. 1318, 154 L. Ed. 2d 1070 (2003).

The defendant argues that the requested DNA instruction accurately stated the applicable law. He further claims that the failure to give the instruction prevented the jury from fully considering exculpating evidence that the defendant was not present at the crime scene, and, as a result, he was denied the right to establish effectively his alibi defense. The defendant relies on § 54-86k to support his argument; however, the defendant's reliance on § 54-86k is misplaced. Section 54-86k, entitled "[a]dmissibility of results of DNA analysis," governs the admissibility of DNA evidence at trial, not jury instructions. Therefore, the relevant inquiry is whether the instruction given by the court fairly presented the case to the jury in such a way that injustice is not done to either party under the established rule of law. See *State* v. *Lopez*, supra, 280 Conn. 822.

In the present case, DNA evidence pertaining to the jacket was admitted into evidence and was presented to the jury through Adamowicz' testimony. Before submitting the case to the jury, the court gave the following instruction: "You may draw reasonable inferences from the established facts in this case. The inferences which you draw, however, must not be from a guess upon the evidence, but they must be from a fact or facts which the evidence has established. . . . The inferences which you draw must be logical and reasonable, and any facts whether inferred or proven directly which are essential to proof of an element of the crimes charged must be proved beyond a reasonable doubt.

"Identification is a question of fact for you to decide, taking into consideration all the evidence that you have seen and heard in the course of the trial. . . . [T]he state must prove beyond a reasonable doubt that the

defendant is the person who committed the crimes charged. . . . If the state fails to prove beyond a reasonable doubt that the defendant was the person who committed any of the crimes charged, you must find him not guilty. . . . Let me talk now about alibi. The defendant has presented what is commonly called an alibi defense. This is a rebuttal by the defendant of the state's attempt to prove that he was present at the scene of the crime and committed or participated in the acts charged. . . . The alibi evidence that the defendant has placed before you seeks to convince you that he was elsewhere at the time and therefore could not possibly have committed the acts charged. That is a proper claim for him to make . . . and you should have no prejudice against it. . . . Whether you believe that a defendant was or was not present and therefore could or could not have done what he has been charged with doing is for you to decide along . . . with all the other facts in this case. . . . I want to make this clear to you: the burden which rests upon the state to prove the accused guilty of the crimes charged beyond a reasonable doubt necessarily involves proof that he was present at the scene of the crime when it was committed. Keep in mind [that] a defendant does not have to prove his claim that he was elsewhere. . . . [I]t is sufficient if in considering all the evidence, there arises in your minds a reasonable doubt as to his presence at the scene of the crime when it was committed. If you have such a doubt, then the defendant is entitled to be not guilty of the crimes charged."

Although the court did not instruct specifically on the validity of DNA evidence, the court did instruct the jury to consider all testimony and exhibits admitted into evidence and, specifically, to determine questions of identification relating to the defendant's alibi defense. We therefore conclude that the court's instruction was proper because it was correct in law, adapted

to the issues of the case and sufficient to guide the jury in its deliberation and presented the case to the jury in such a way that injustice was not done to either party.

## III

The defendant's final claim is that the court improperly denied his motion for a judgment of acquittal. Specifically, he argues that the jury verdict on the charges of felony murder and robbery in the first degree is legally inconsistent because he was acquitted of the crime of robbery in the first degree, which he claims was the predicate felony for the felony murder charge. The defendant requests that we reverse the judgment of conviction on that count and remand the case with direction to render judgment of acquittal. We are not persuaded.

The following additional facts and procedural history are relevant to our resolution of this issue. The state's fourth substitute information was filed on December 7, 2004, and set forth five counts. The first count of the information charged that the defendant and Perry committed felony murder in violation of § 53a-54c.[6] The state alleged that on or about March 28, 2001, between

---

[6] General Statutes § 53a-54c provides: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than the one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (1) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (2) was not armed with a deadly weapon, or any dangerous instrument; and (3) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (4) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

7:30 and 8:30 p.m., the defendant and Perry "did commit a robbery [of Mike's Package Store] and in the course of and in furtherance of such crime, the [defendant] or another participant, to wit: Richmond Perry, did cause the death of a person other than one of the participants, namely: Edmund Caruso . . . ."

In the third count of the information, the state charged the defendant with robbery in the first degree in violation of § 53a-134 (a) (2).[7] The state alleged that the defendant "did commit a robbery of Edmund Caruso, and in the course of the commission of the robbery, the [defendant] was armed with a deadly weapon, to wit: a 9mm pistol . . . ."

The jury found the defendant guilty of felony murder and not guilty of robbery in the first degree. Prior to sentencing, the defendant filed a motion for a judgment of acquittal, which the court denied.

"In reviewing the denial of a motion for judgment of acquittal . . . we determine whether, from all of the evidence and the reasonable inferences drawn there-from, the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Green*, 81 Conn. App. 152, 155, 838 A.2d 1030, cert. denied, 268

---

[7] General Statutes § 53a-134 (a) provides: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

Conn. 909, 845 A.2d 413 (2004). "While an inconsistent verdict is not objectionable in itself, its inconsistency may be considered insofar as it supports a claim that the jury's conclusion was not reasonably and logically reached." *State* v. *Manning*, 162 Conn. 112, 123, 291 A.2d 750 (1971).[8]

We begin by stating the applicable legal principles. "The issue of legal inconsistency typically arises when a defendant is convicted of two offenses that contain contradictory elements. Such verdicts are legally inconsistent if the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted. . . . [T]he defendant was convicted of one offense and acquitted of the other. [Because the court is] not dealing with a situation in which the defendant is convicted of two offenses, and one conviction negates the other, the verdicts are not legally inconsistent in the usual sense. . . .

[8] The state argues that this claim is not reviewable because our jurisprudence has recognized the principles set forth in *United States* v. *Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984), and *Dunn* v. *United States*, 284 U.S. 390, 393, 52 S. Ct. 189, 76 L. Ed. 356 (1932), that claims of an inconsistent verdict are not reviewable because courts generally will not undertake inquiries into jury deliberations. *State* v. *Cassidy*, 3 Conn. App. 374, 389–90, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985). Our Supreme Court has recognized, however, that when a defendant claims that the court improperly denied a motion for a judgment of acquittal, the inconsistency of the verdict may be considered when the verdict is legally inconsistent or when the inconsistency is the basis of a claim that the jury's conclusion was not reasonably and logically reached. *State* v. *DeCaro*, 252 Conn. 229, 242–45, 745 A.2d 800 (2000); *State* v. *Manning*, supra, 162 Conn. 123; see also *State* v. *Flowers*, 85 Conn. App. 681, 693–95, 858 A.2d 827, rev'd on other grounds, 278 Conn. 533, 898 A.2d 789 (2006). On the other hand, a factually inconsistent verdict will not be overturned on appeal. See *State* v. *Knight*, 266 Conn. 658, 670, 835 A.2d 47 (2003); *State* v. *DeCaro*, supra, 242. Because the defendant's claim is that the jury's verdict was legally inconsistent, we review the claim to determine whether the jury reasonably could have concluded that he was guilty of felony murder beyond a reasonable doubt.

"[W]here the inconsistent verdicts claim involves a simultaneous conviction and acquittal on different offenses, the court, in testing the verdict of guilty for inconsistency as a matter of law, is necessarily limited to an examination of the offense charged in the information and the verdict rendered thereon without regard to what evidence the jury had for consideration. . . . If the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other." (Citations omitted; internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 244, 745 A.2d 800 (2000); *State* v. *Rudd*, 62 Conn. App. 702, 709, 773 A.2d 370 (2001); *State* v. *Soto*, 59 Conn. App. 500, 504, 757 A.2d 1156, cert. denied, 254 Conn. 950, 762 A.2d 906 (2000).

Our examination of the offenses charged in the information, namely, felony murder and robbery in the first degree, leads us to conclude that they contain different elements.

We begin our analysis by setting forth the elements of felony murder. "In order to obtain a conviction for felony murder the state must prove, beyond a reasonable doubt, all the elements of the statutorily designated underlying felony, *and in addition, that a death was caused in the course of and in furtherance of that felony.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Lewis*, 245 Conn. 779, 786, 717 A.2d 1140 (1998); *State* v. *Kyles*, 221 Conn. 643, 665, 607 A.2d 355 (1992). The underlying or predicate felony charged by the state in the present case was robbery. Robbery is defined in General Statutes § 53a-133. A person who "commits robbery as defined in Section 53a-133"; General Statutes § 53a-136 (a); "is guilty of robbery in the third degree . . . ." General Statutes § 53a-136 (a). "In order to prove the commission of a robbery, the state must prove that the defendant used or threatened the use of force in the commission of a larceny. See General

Statutes § 53a-133; *State* v. [*Crosswell*], 223 Conn. 243, 250, 612 A.2d 1174 (1992). A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an *owner*. . . . General Statutes § 53a-119. An owner means any person who has a right to possession superior to that of a taker, obtainer or withholder. General Statutes § 53a-118 (a) (5) . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Morant*, 242 Conn. 666, 671, 701 A.2d 1 (1997); see also *State* v. *Moore*, 100 Conn. App. 122, 129, 917 A.2d 564 (2007).

We now set forth the elements for the crime of robbery in the first degree. "The essential elements of § 53a-134 (a) (2) . . . are that a person is guilty of robbery in the first degree when in the commission of the crime he is armed with a deadly weapon." *State* v. *Torres*, 24 Conn. App. 316, 325, 588 A.2d 232, cert. denied, 218 Conn. 911, 591 A.2d 813 (1991); see also *State* v. *Milledge*, 8 Conn. App. 119, 123, 511 A.2d 366 (1986) (essential elements are robbery committed with deadly weapon).

It is clear that each offense contains an element that the other does not. The crime of felony murder, as charged in the present case, required the state to prove beyond a reasonable doubt that a death was caused in the course of and in furtherance of the robbery of the package store. There is no requirement that the defendant be armed with a deadly weapon. The crime of robbery in the first degree, as charged in this case, required the state to prove beyond a reasonable doubt that the defendant committed a robbery while armed with a deadly weapon. There is no requirement that a death resulted from the commission of this crime. Thus, each offense contains different elements, and, consequently, a conviction of one is not inconsistent on its

face with an acquittal on the other. See *State* v. *DeCaro*, supra, 252 Conn. 244. We conclude, therefore, that the defendant's conviction of felony murder is not inconsistent with the acquittal of robbery in the first degree.

The defendant argues that two Supreme Court cases, *State* v. *Morin*, 180 Conn. Conn. 599, 430 A.2d 1297 (1980), and *State* v. *Greco*, 216 Conn. 282, 597 A.2d 84 (1990), support his claim of a legally inconsistent verdict. Specifically, he contends that *Morin* and *Greco* support his claim that robbery in the first degree was a lesser offense included within felony murder in this case. The state counters that *Morin* and *Greco* are distinguishable and, therefore, not applicable to the present case. We agree with the state.

In *Morin*, the defendant was convicted of felony murder, and the sole issue on appeal was whether the trial court improperly refused to instruct the jury on burglary in the first degree and robbery in the first degree as lesser included offenses. *State* v. *Morin*, supra, 180 Conn. 600–601. The charge of robbery in the first degree was based on the allegation that the defendant caused serious physical injury to a person who was not a participant in the crime. See General Statutes § 53a-134 (a) (1).[9] Both the state and the defendant requested the charge for the lesser included offenses. *State* v. *Morin*, supra, 602. The court stated that "[t]he parties' requests for an instruction on first degree burglary and robbery is more accurately characterized as a mutual acknowledgement that the allegations of the indictment supported a charge on those crimes as lesser included offenses under *State* v. *Brown*, 163 Conn. 52, 61–62, 301 A.2d 547 (1972)." *State* v. *Morin*, supra, 602 n.4. The court then applied the four part test set forth in

---

[9] In the present case, in contrast to the facts of *Morin*, the charge of robbery in the first degree was based on the allegation that the defendant was armed with a deadly weapon. See General Statutes § 53a-134 (a) (2).

*State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980), to determine if the trial court should have given the requested instruction on the charges of burglary in the first degree and robbery in the first degree.[10] The court, in addressing the second *Whistnant* factor, concluded that it was not possible to commit the greater offense of felony murder without first committing the lesser offenses of burglary in the first degree and robbery in the first degree. *State* v. *Morin,* supra, 601–602. In other words, the parties in *Morin* agreed that burglary in the first degree and robbery in the first degree were the underlying felonies for the crime of felony murder where the defendant was alleged to have caused serious physical injury to a person who was not a participant in the crime.[11] In the present case, there was no such agreement between the defendant and the state. Moreover, as we previously noted, it was possible for the defendant in the present case to commit felony murder and not to commit robbery in the first degree.[12] We therefore agree with the state that the defendant's reliance on *Morin* is misplaced.

[10] "[T]here is no fundamental constitutional right to a jury instruction on every lesser included offense . . . . Rather, the right to such an instruction is purely a matter of our common law. A defendant is entitled to an instruction on a lesser [included] offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Citation omitted; internal quotation marks omitted.) *State* v. *Schultz,* 100 Conn. App. 709, 718–19, 921 A.2d 595, cert. denied, 282 Conn. 926, 926 A.2d 668 (2007).

[11] See, e.g., *State* v. *Greco,* supra, 216 Conn. 298 n.1 (*Shea, J.,* concurring).

[12] In *Morin,* the jury was required to find that the defendant caused serious physical injury to a person who was not a participant in the crime in order to find him guilty of robbery in the first degree.

In *Greco*, the defendant pleaded guilty pursuant to the *Alford* doctrine[13] to felony murder, robbery in the first degree and burglary in the first degree. *State* v. *Greco*, supra, 216 Conn. 283–85. On appeal, the defendant claimed that the double jeopardy clause[14] of the fifth amendment to the United States constitution prevented the state from punishing him for robbery in the first degree, burglary in the first degree, and felony murder. Id., 287–88. The question before the *Greco* court, therefore, was "whether robbery in the first degree, burglary in the first degree and felony murder based on the predicate offenses of 'robbery and burglary' are the same offense *for the purposes of double jeopardy analysis.*" (Emphasis added.) Id., 291. The court determined that, under the *Blockburger*[15] test, "first degree robbery and first degree burglary constitute the same offense as felony murder . . . where the felony murder count alleges 'robbery and burglary' as the predicate offenses." Id. Nevertheless, it went on to conclude that on the basis of the language, structure and legislative history of the felony murder statute, "the legislature clearly intended multiple punishments for felony murder and the underlying predicate offenses of robbery and burglary." Id., 297. The analysis conducted by the *Greco* court, therefore, was limited to the issue of whether the defendant's conviction of both felony murder and robbery in the first degree violated the double jeopardy clause.

[13] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[14] "The fifth amendment to the United States constitution provides in relevant part: No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969)." (Internal quotation marks omitted.) *State* v. *Bletsch*, 281 Conn. 5, 27, 912 A.2d 992 (2007).

[15] *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

The defendant in the present case claims that the jury verdict of guilty with respect to the felony murder charge and not guilty as to the charge of robbery in the first degree was legally inconsistent. He does not claim a double jeopardy violation. As we stated previously, "[i]f the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other." (Internal quotation marks omitted.) *State* v. *Rudd*, supra, 62 Conn. App. 709. As set forth in the operative information filed by the state in the present case, felony murder and robbery in the first degree contain different elements. The jury's verdict finding him guilty of felony murder and not guilty of robbery in the first degree was not inconsistent. We conclude that the court properly denied the defendant's motion for a judgment of acquittal.[16]

The judgment is affirmed.

In this opinion the other judges concurred.

___

[16] The defendant also claims that the jury may have wrongly considered the fifth count of the applicable information, which charged him with conspiracy to commit robbery in the first degree as the predicate felony for the charge of felony murder. We find this argument to be without merit. The court instructed the jury that in order to find him guilty of felony murder, it was required to find that he committed a robbery. The court then explained to the jury the elements of robbery and larceny. At no time during its instructions on the crime of felony murder did the court mention conspiracy to commit robbery in the first degree. "Barring contrary evidence, we must presume that juries follow the instructions given them by the trial judge." (Internal quotation marks omitted.) *State* v. *Bell*, 93 Conn. App. 650, 658, 891 A.2d 9, cert. denied, 277 Conn. 933, 896 A.2d 101 (2006); *State* v. *Harris*, 85 Conn. App. 637, 646, 858 A.2d 284, cert. denied, 272 Conn. 901, 863 A.2d 695 (2004); *State* v. *Goodson*, 84 Conn. App. 786, 818, 856 A.2d 1012, cert. denied, 271 Conn. 941, 861 A.2d 515 (2004).